PRATHER, Justice,
for the Court:
I. INTRODUCTION
In this consolidated case, Reverend Herman Fountain, Sr. appeals the court-ordered closure of the Bethel Baptist Children’s Home in Lucedale and the subsequent finding of criminal contempt. The chancellor ordered the closure after Fountain, who personally operated the children’s home, refused to comply with State licen-sure requirements. The chancellor then found Fountain in constructive criminal contempt after Fountain refused to comply with the court order. This Court affirms.

A. The Facts

In 1989, the Mississippi Legislature passed the “Child Residential Home Notification Act” (hereinafter “Act”). Miss.Code Ann. § 43-16-1 et seq. (Supp.1991). Pursuant to this Act, the operator of any “child residential home” must provide the State Department of Health (hereinafter “SDH”) with notice of its operation. These homes must also meet licensure requirements, which entails the simple disclosure of some basic information about the home, its operators, and residents. Id. § 43-16-9.
Upon passage of this Act, SDH mailed letters to all operators of child residential homes — informing them about the Act’s requirements and requesting them to contact SDH about compliance procedures. Herman Fountain, operator of Bethel Chil *707 dren’s Home, received one of these letters. But Fountain did not respond.[1]
Receiving no response, SDH mailed another letter to Fountain. But again, Fountain refused to respond. SDH mailed a third and then a fourth letter to Fountain— warning him of the consequences of his failure to comply. But SDH’s warnings went unheeded. Finally, SDH attempted to discuss the matter — in person — with Fountain, but Fountain adamantly refused to cooperate.
Fountain’s defiance and refusal to follow state law concerned SDH — particularly in view of the numerous reports of child abuse by Fountain and his employees which SDH had received over the years.
On November 29, 1989 — over five months after mailing the first letter to Fountain — SDH filed a “Complaint for In-junctive Relief” in the George County Chancery Court. In short, SDH requested that Bethel Baptist Children’s Home be closed down and that Fountain be permanently enjoined from providing supervision, care, lodging and maintenance for any child in any children’s residential home.
Fountain answered SDH’s complaint pro se by contending that Bethel Baptist Children’s Home should be exempt from State regulation since the home is affiliated with Bethel Baptist Church.
On January 12, 1990, Chancellor Robert H. Oswald held a hearing on SDH’s complaint. At the conclusion of the hearing, the chancellor issued an order through which he enjoined Fountain from operating the children’s home[2]. The chancellor issued a permanent injunction to remain in effect until Fountain complied with the Act’s simple requirements and to continue under a duty to abide by the Child Residential Notification Act. Fountain appealed.
Meanwhile, on April 19, 1990, SDH filed a “Motion for Contempt” in the George County Chancery Court. SDH based its motion on its contention that Fountain had continued to operate the children’s home in violation of the chancellor’s January 12 order. Chancellor Oswald held a hearing on SDH’s motion and, on May 18, he issued a “Judgment on Contempt.” Specifically, the chancellor: (1) found Fountain in contempt — civilly and criminally; (2) ordered Fountain to refrain from operating the children’s home until he complied with the Act’s requirements; and (3) sentenced Fountain to five months in county jail. Fountain appealed. This Court consolidated this appeal (No. 90-CA-0635) and Fountain’s appeal of the chancellor’s issuance of the injunction on January 12 (No. 90-CA-0137).

B. The Issues

Through his appeal of the chancellor’s January 12 order enjoining him from operating the children’s home, Fountain presented numerous confusingly phrased legal issues. These issues are consolidated as follows:

1. Whether the Act “interferes with his constitutional right to freedom of religion?”

2. Whether Fountain’s children’s home was subject to the provisions of the Act?

Through his appeal of the chancellor’s finding of contempt, Fountain presented more confusingly phrased legal issues which are consolidated accordingly:

Whether the chancellor properly found Fountain in contempt?

II. ANALYSIS

A. Fountain’s First Appeal: Case No. 90-CA-0137

1. Issue # 1

Through this first issue, Fountain contends that the Act “interferes with his con *708 stitutional right to freedom of religion.” Fountain does not specifically explain how the Act actually “interferes” with this right. He simply states that:
[My] congregation [and I] at Bethel Baptist Church and Ministeries [sic] have elected to maintain a common law master-servant relationship with [our] Lord, Jesus Christ. [Therefore, t]he State of Mississippi has no lawful authority to interfere in any way with the relationship or to invade the privacy of the congregation or any individual member.
Appellant’s Brief at 11-12.
Fountain’s contention is devoid of merit. The First Amendment to the U.S. Constitution provides that governments “shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.” In other words, no government shall enact any law that unnecessarily impedes or obstructs the freedom to establish a religion or exercise religious beliefs. See, e.g., Walz v. Tax Comm’n, 397 U.S. 664, 667, 90 S.Ct. 1409, 1410-11, 25 L.Ed.2d 697, 700 (1970) (holding that a statute must have a secular legislative purpose, must neither advance nor inhibit religion, and must not foster excessive government entanglement with religion); Wisconsin v. Yoder, 406 U.S. 205, 221-29, 92 S.Ct. 1526, 1536-40, 32 L.Ed.2d 15, 28-33 (1972) (holding that a statute must not impede observance of religion or expression of religious beliefs, and the statute must be justified by a compelling state interest and be the least restrictive means for protecting this interest). Thus, religion-based “[conduct remains subject to regulation for the protection of society.” See Cantwell v. Connecticut, 310 U.S. 296, 303-04, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1217-18 (1939). A government, for example, may regulate by requiring minimum fire and building safety standards and by requiring fire and building safety inspections in church-owned buildings. See Lemon v. Kurtzman, 403 U.S. 602, 613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745, 755-56 (1971).
With the foregoing constitutional principles in mind, the legislature passed the “Child Residential Home Notification Act” to ensure that operators of these homes maintain a minimum standards of health, nutrition, cleanliness, sanitation, and so forth. Miss.Code Ann. § 43-16-15 (Supp. 1991). Contrary to Fountain’s unsubstantiated contention, nothing in the Act can be deemed an interference with his or the congregation’s freedom to establish their religion or to exercise their religious beliefs. Indeed, the Act expressly provides that:
Nothing in this [Act] shall give any governmental agency jurisdiction or authority to regulate or attempt to regulate, control or influence the form, manner or content of the religious curriculum, program or ministry of a school or of a facility sponsored by a church or religious organization.
Id. § 43-16-23.
Because the Act is unequivocally secular in nature and application, this Court rejects Fountain’s contention and affirms on this issue.

2. Issue #2

Through this issue, Fountain contends that his children’s home is not subject to the provisions of the “Child Residential Home Notification Act.” Fountain’s contention is devoid of merit. The Act applies to “any place, facility or home” which is established for the “supervision, care [and] maintenance” of children “who are not related to the operators and whose parents or guardians are not residents of the same facility.” Id. § 43-16-3(b). The Bethel Baptist Children’s Home unequivocally falls within the realm of this definition; Fountain himself does not dispute this. Fountain’s dispute is with the fact that the Act does not specifically and expressly provide that it applies to homes which are affiliated with churches. But the Act’s provision that it applies to any “organization” or “association” which operates a children’s home is generic phraseology which encompasses Fountain’s children’s home.
This Court rejects Fountain’s strict construction of the Act’s provisions and affirms on this issue.

*709
B. Fountain’s Second Appeal: Case No. 90-CA-0635

Fountain’s challenge of the chancellor’s decision finding him in contempt is twofold.
1.
Fountain first contends that the chancellor had no legal right to find him in contempt because he operated his children’s home prior to passage of the Act. Thus, Fountain concludes, the Act’s application to him violated the ex post facto clause of the U.S. Constitution. Appellant’s Brief at 10-11.
The so-called ex post facto clause provides: “No Bill of Attainder or ex post facto Law shall be passed.” U.S. Const, art. I, § IX. Black’s Dictionary defines an ex post facto law as that which “provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent.” Black’s Law Dictionary 520 (5th ed. 1979).
Clearly, the ex post facto clause has no application under the facts of this case. See Dunn v. Grisham, 250 Miss. 74, 157 So.2d 766, 768 (1968). The chancellor found Fountain in contempt and sentenced him to five months in county jail for “an act done which, when it was committed, [cannot be deemed] innocent.”
2.
Fountain also contends that he cannot be held in contempt since the legislature failed to “define [the Act] in it’s [sic ] entirety.” Specifically, the Act — according to Fountain — fails to “define” the number of children who must reside in a home in order for the Act to apply to that home. Appellant’s Brief at 16.
The adequacy of the Act’s definitions has no relevance whatsoever to whether the chancellor properly found Fountain in contempt. Fountain fails to even address the issue of the propriety of the chancellor’s finding, which the record clearly supports. He sidesteps the issue and frivolously challenges the Act’s alleged definitional deficiency.
3.
The chancellor properly found Fountain in contempt for failure to comply with a court order. This Court therefore affirms on this issue.
III. CONCLUSION.
Fountain has wholly failed to provide this Court with a reason with which to reverse the chancellor’s decisions in either of the two cases. This Court therefore affirms the chancellor’s order to close the Bethel Baptist Children’s Home and the finding of both civil and constructive criminal contempt.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., and ROBERTS, J., not participating.

. While testifying at a subsequent hearing, Fountain admitted that he threw the letter in the trash because the home and children are none of the State’s business. See Rec.Vol. II (No. 90-CA-0137), at 71-72.

. The chancellor found by clear and convincing evidence that Bethel Baptist Church and Herman Fountain Sr., individually and as Director/Operator Bethel Baptist Church, had not been licensed by Department of Human Services, had not complied with Child Residential Notification Act, and had not permitted fire inspection by the State. Fountain, of course, did not — and does not — dispute the chancellor’s findings.